UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAY GEROW, et al.,

    Plaintiffs,

v.

STATE OF WASHINGTON, et al.,

    Defendants.

CASE NO. C08-5087BHS

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(c) AND TO SHOW CAUSE

This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) (Dkt. 21). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On February 13, 2008, Plaintiffs Jay Gerow and ZDI Gaming, Inc., ("ZDI") filed a complaint against Defendants State of Washington, Rick Day, John Ellis, Janice Niemi, Peggy Bierbaum, Kevin Rojecki, and Margarita Prentice. Dkt. 1 ("Complaint"). Plaintiffs allege that Defendants' actions violated 42 U.S.C. § 1983, Washington tort laws, and the Washington State Constitution. *Id.*

On August 28, 2008, Defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c). Dkt. 21. On September 22, 2008, Plaintiffs responded. Dkt. 35. On September 26, 2008, Defendants replied and moved to strike material that Plaintiffs had submitted in support of their response. Dkt. 38. On October 3, 2008, Plaintiffs filed a surreply requesting leave of Court to respond to Defendants' motion to strike and moved to strike material contained in Defendants' reply brief. Dkt. 42.

ORDER - 1

## II. FACTUAL BACKGROUND

**A.     Washington Statutes**

In 1973, the Washington legislature adopted the Gambling Act ("the Act") "to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control." RCW 9.46.010.  The Act authorized the creation of a commission "known as the 'Washington state gambling commission,' consisting of five members appointed by the governor with the consent of the senate." RCW 9.46.040.  The commission was given the power and duty "to adopt such rules and regulations as are deemed necessary to carry out the purposes and provisions of [the Act]." RCW 9.46.070(14).  "All rules and regulations shall be adopted pursuant to the administrative procedure act, chapter 34.05 RCW." *Id*.

The Act authorizes the game of pull-tabs provided that the activity is conducted in compliance with the applicable rules and regulations. *See* RCW 9.46.010 and 9.46.0325. The game of pull-tabs is given its "usual and ordinary meaning as of July 16, 1973, except that such definition may be revised by the [gambling] commission pursuant to [the Act]." RCW 9.46.0273.

Manufacturers and distributors of gambling devices and related equipment must obtain licenses from the Commission under the provisions of the Act. *See* RCW 9.46.310; WAC 230-14-045 and 230-16-001.  Prior to the sale, lease or operation of gambling equipment, a licensee must submit the equipment to the Commission for review to verify compliance with state statutes and administrative regulations. *See* WAC 230-12-316 (repealed 1/1/08, current version at WAC 230-06-050).  As with other gambling devices and equipment, video pull-tab dispensers are subject to regulation by the Commission. *See* RCW 9.46.0241; WAC 230-16-001.  The standards for pull-tab dispensers in effect during the relevant period were set forth in WAC 230-30-097 (repealed 1/1/08).

**B.     Plaintiff ZDI's VIP Machine**

In July 1997, the Commission approved an electronic pull-tab dispenser with a video display that "looks like a slot machine." *See* Complaint, ¶ 5.1. Although the video display "has lights, spinning reels and audio sounds," the machine dispenses a paper pull-tab with a "predetermined win" that is not affected by the electronic equipment. *Id.* In June 2002, the Commission approved ZDI's electronic video pull-tab dispenser, commonly referred to as the "VIP." *Id.* ¶ 5.6. "The VIP dispenses a paper pull-tab, which the player may elect to put back into the equipment to enjoy the sounds and lights. It is similar to the equipment initially approved in 1997." *Id.*

In March 2005, Plaintiffs sought the Commission's approval of an upgrade to the VIP. *Id.* ¶ 5.14. Plaintiffs claim that "[t]he upgrade was the attachment of a cash card acceptor" permitting the "operator to buy a paper pull-tab from the equipment with the [cash] card, rather than cash." *Id.* "When the player is finished, the value of any winning paper pull-tab under $20.00 is transferred to the cash card." *Id.* In August 2005, the Commission staff denied approval of the equipment upgrade. *Id.* ¶ 5.15.

In September 2005, Plaintiffs petitioned the Commission for declaratory relief and sought approval of the upgraded VIP. *Id.* ¶ 5.16. Following an administrative hearing on Plaintiffs' petition, the Commission issued a Final Order that denied the petition and upheld the denial of the upgraded VIP. *Id.* ¶¶ 5.20, 5.21, and 5.27. In September 2006, Plaintiffs sought judicial review of the Commission's Final Order. *Id.* ¶ 5.28. The Thurston County Superior Court ruled that the upgraded VIP complied with the law and that it was not an "expansion of gambling." *Id.* ¶ 5.30.

On September 15, 2007, the Commission appealed the Superior Court's ruling, and Plaintiffs cross-appealed. *Id.* Shortly thereafter, Plaintiffs "advised the Gambling Commission that ZDI was putting its upgraded equipment out into the marketplace consistent with the trial court's declaration that the upgrade was legal." *Id.* ¶ 5.37. The Commission then sought and received a stay of the Superior Court's ruling pending the

appeal. *Id.* ¶ 5.39. The appellate case is currently pending in the Washington State Court of Appeals. *Id.* ¶ 5.30.

In January 2008, the Commission adopted two new rules related to electronic gaming machines that accept cash. Plaintiffs claim the Commission adopted the new rules "deliberately and intentionally . . . in retaliation for [Plaintiff Gerow] exercising his right to judicial relief." *Id.* ¶ 5.41. One new rule defines "cash" as "currency in the form of coins or bills issued by the government of the United States or Canada only and does not include electronic, digital or other representations of money or other methods of payment." WAC 230-06-003. The Commission also adopted a rule titled "Standards for electronic video pull-tab dispensers," which reads as follows:

> Electronic video pull-tab dispensers must be approved by us prior to use, meet the requirements below, and may incorporate only the features below and not perform additional functions.
>
> (1) Electronic video pull-tab dispensers must dispense a paper pull-tab as defined in WAC 230-14-010 and follow the rules for:
>
> (a) Pull-tabs; and
>
> (b) Flares; and
>
> (c) Authorized pull-tab dispensers.
>
> (2) Electronic video pull-tab dispensers that use a reading and displaying function must:
>
> (a) Use a video monitor for entertainment purposes only; and
>
> (b) Open all, or a portion of, the pull-tab in order to read encoded data that indicates the win or loss of the pull-tab if the dispenser is equipped to automatically open pull-tabs; and
>
> (c) Dispense the pull-tab to the player and not retain any portion of the pull-tab; and
>
> (d) Read the correct cash award from the pull-tab either when it is dispensed or when the pull-tab is reinserted into the dispenser; and
>
> (e) Display the cash award from the pull-tab, one pull-tab at a time; and
>
> (f) Provide:

    (i) An electronic accounting of the number of pull-tabs dispensed; and

    (ii) A way to identify the software version and name; and

    (iii) A way to access and verify approved components; and

    (iv) Security on the dispenser to prevent unauthorized access to graphic and prize amount displays.

   (3) Gift certificates or gift cards used in electronic video pull-tab dispensers must:

    (a) Be purchased with cash, check or electronic point-of-sale bank transfer before use in the dispenser; and

    (b) Be convertible to cash at any time during business hours; and

    (c) Subtract the cash value for the purchase of the pull-tab one pull-tab at a time.

WAC 230-14-047.

## III. DISCUSSION

### A. Defendants' Motion to Strike

Defendants request that the "Court strike the 1121 pages of declarations and accompanying documentary exhibits [Docket Nos. 36 and 37] submitted by Plaintiffs in support of their response to Defendants' motion to dismiss." Dkt. 38 at 2. Defendants argue that "[a] motion to dismiss tests the sufficiency of the pleadings; therefore, the court is not permitted to consider external evidence." *Id.* at 3. The Court agrees.

On a motion to dismiss, the court's review is generally limited to the pleadings and material factual allegations contained in the complaint are accepted as true. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A court may, however, take judicial notice of and consider records and reports of administrative bodies submitted by a party without converting a motion to dismiss to a motion for summary judgment. *See U.S. v. 14.02 Acres of Land More or Less in Fresno County*, 530 F.3d 883, 894 (9th Cir. 2008). As for the sheer volume of documents submitted by Plaintiffs, "a party may not prevail in opposing a motion for summary judgment by simply overwhelming the district court with a miscellany of unorganized

ORDER - 5

documentation." *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). While the Court recognizes that rule applies to summary judgment motions, it seems even more appropriate in regard to voluminous evidence submitted in opposition to a motion for judgment on the *pleadings*.

In this case, Plaintiffs have submitted 1121 pages of supplemental material in support of its opposition. Dkts. 36 and 37. Defendants describe that evidence as follows:

> In addition to the declarations of counsel and Mr. Gerow, the supplemental materials contain approximately [245] pages of deposition transcripts, and 464 pages of deposition exhibits. *See* Docket Nos. 36 and 37. The materials also contain correspondence, transcripts of Washington State Gambling Commission public meetings, and approximately 155 pages of documents filed in the administrative declaratory judgment proceedings currently on appeal before the Washington State Court of Appeals. See Docket Nos. 36 and 37. With minor exceptions, the documents do not qualify as public records or records of an administrative body of which the Court may properly take judicial notice without converting the Motion to Dismiss to a motion for summary judgment.

Dkt. 38 at 3-4. It is important to note that Plaintiffs rarely cite to any of this material in their arguments in opposition to Defendants' motion. *See generally* Dkt. 35. Regardless, Plaintiffs filed a surreply and claimed that "equity suggests they should have an opportunity to respond" to Defendants' motion to strike. Dkt. 42, ¶ 1.4. Plaintiffs argue as follows:

> In the event the Court is inclined to strike the factual submissions, and is also inclined to dismiss the case because of a *defect in the evidence offered*, then plaintiffs respectfully request the opportunity to cure any defect by way of response to avoid unfair prejudice to the rights of Mr. Gerow and his business.

*Id*. (emphasis added). Plaintiffs misapprehend the current procedural posture of this case. Defendants have moved for a judgment on the pleadings in which the "factual allegations contained *in the complaint* are accepted as true." *See supra* (emphasis added). The Court would most likely commit reversible error by granting a motion to dismiss based on a defect in the evidence submitted in support of an opposing brief.

Therefore, Defendants' motion is granted as to the majority of the material submitted by Plaintiffs. In the event that the Court does review material outside of the

pleadings, the Court will specifically state that it is taking judicial notice of certain material.

**B.     Plaintiffs' Motion to Strike**

Plaintiffs move to strike an apparent conflict between a representation Defendants' counsel Jerry Ackerman made to the Court and one that he made at a Gambling Commission meeting. Dkt. 42, ¶¶ 1.6-1.7. Whatever conflict there may be, if any, is irrelevant to the determination of this motion. Therefore, the Court denies Plaintiffs' motion to strike.

**C.     Motion to Dismiss Federal Claim**

Defendants request that the Court dismiss Plaintiffs' claim under 42 U.S.C. § 1983 because (1) Defendants are immune from suit under the Eleventh Amendment; (2) Plaintiffs have failed to state a claim under 42 U.S.C. § 1983; and (3) Defendants are entitled to legislative immunity from suit. Dkt. 21 at 8-24.

**1.     Standard of Review**

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(c), the court applies the same standard of review applicable to a motion under Fed. R. Civ. P. 12(b). *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The Court may dismiss a complaint for "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir.1984). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). Finally, the plaintiff bears the burden of pleading facts sufficient to state a claim. *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988).

**2.     Eleventh Amendment**

Defendants claim that the State of Washington and the individual Defendants acting in their official capacities are immune from suit. Dkt. 21 at 8. The Eleventh Amendment to the United States Constitution reads as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. The Eleventh Amendment of the United States Constitution prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent. *Natural Res. Defense Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). Moreover, state immunity extends to state agencies and to state officers who act on behalf of the state and can therefore assert the state's sovereign immunity. *Cal. Dep't of Transp.*, 96 F.3d at 421 (citing *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-46 (1993)).

Plaintiffs argue that the "State's consent to federal court jurisdiction estops Defendants from asserting the 11th Amendment to bar litigation against the State and its officials in federal court." Dkt. 35 at 12. The state has consented to suits as follows:

> The state consents to the jurisdiction of the federal courts in actions brought by a tribe pursuant to the Indian gaming regulatory act of 1988 or seeking enforcement of a state/tribal compact adopted under the Indian gaming regulatory act, conditioned upon the tribe entering into such a compact and providing similar consent. This limited waiver of sovereign immunity shall not extend to actions other than those expressly set forth herein.

RCW 9.46.36001. Plaintiffs contend that the state's express "waiver is not limited to actions brought by a tribe" and that "[t]his case concerns Defendants' enforcement of exclusive machine gaming rights as promised in compact negotiations." Dkt. 35 at 12.

Defendants assert that the statute expressly identifies two types of actions that the state of Washington has consented to: (1) actions brought by a tribe pursuant to the Indian Gaming Regulatory Act ("Gaming Act"); and (2) actions in which a party seeks enforcement of a compact adopted under the Gaming Act, provided that the tribe that entered into the compact has also consented to waive sovereign immunity for such an action. Dkt. 38 at 5. Defendants claim that "[i]n their complaint, Plaintiffs fail to allege being a part to or having any legal rights under any identified state and tribal gaming

compact negotiated under the [Gaming Act]." *Id*. Defendants conclude that "[c]ontrary to Plaintiffs' assertions, RCW 9.46.36001 is not applicable to this lawsuit and neither the State of Washington nor its officers in their official capacities have waived their right to sovereign immunity under the Eleventh Amendment." *Id*. at 6.

Plaintiffs' arguments that the state's waiver under RCW 9.46.36001 applies to the claims in this Complaint are without merit. Plaintiffs cite no legal authority for their proposition that "Defendants have consented to federal court jurisdiction" under the facts alleged in the Complaint. *See* Dkt. 35 at 12. Therefore, Defendants' motion to dismiss Plaintiffs' claim under 42 U.S.C. § 1983 is granted because Defendant State of Washington and Defendants Rick Day, John Ellis, Janice Niemi, Peggy Bierbaum, Kevin Rojecki, and Margarita Prentice acting in their official capacity are immune from Plaintiffs' suit under the Eleventh Amendment.

### 3. Legislative Immunity

Defendants claim that the doctrine of legislative immunity shields the individual Defendants from both official capacity liability and individual liability in this action. Dkt. 21 at 18-23. In support of their contention, Defendants cite the Supreme Court's decision in *Bogan v. Scott-Harris*, 523 U.S. 44 (1998). In *Bogan*, the Court held that "legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Id*. at 53. The Court stated that the rationale underlying legislative immunity was that "the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *Id*. at 52. Moreover, "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Id*. at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 388 (1951)).

Plaintiffs argue that legislative immunity is not applicable to the individual Defendants because this "case concerns a state entity appointed by the executive branch of government without authority to adopt rules in strict compliance with the Administrative Procedures Act." Dkt. 35 at 36. "Whether an act is legislative turns on

the nature of the act, rather than on the motive or intent of the official performing it."
*Bogan v. Scott-Harris*, 523 U.S. at 54. Thus, an administrative agency may perform legislative functions and, when it does, it may be entitled to legislative immunity. The Ninth Circuit has developed a four-part test to determine whether an act was legislative; "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals or the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir.2003) (internal quotation marks omitted).

The adoption of the WACs in question meet all four of these factors. First, the adoption of administrative regulations is more akin to the formulation of policy instead of ad hoc decisionmaking. Even Plaintiffs admit that the rules were adopted months after they were proposed and the Commission considered at least two other alternative rules. Complaint, ¶¶ 5.32-5.41. Plaintiffs cite *Chateaubriand v. Gaspard*, 97 F.3d 1218 (9th Cir.2003), for the proposition that "[a]dministrative functions are not subject to legislative immunity." Dkt. 35 at 37. Plaintiffs' authority is not on point as the *Gaspard* court stated that "employment and personnel decisions [are] administrative, rather than legislative." *Gaspard*, 97 F.3d at 1220-21. The issue before this Court is not an employment or personnel decision.

Second, the regulations at issue are applicable to the public at large. Although Plaintiffs repeatedly allege that the rule was adopted to only affect them, it can hardly be argued that the Washington Administrative Code only applies to Plaintiffs.

Third, the adoption of the regulation was formally legislative. The Washington Administrative Procedures Act states that rule making hearings "are legislative in character." RCW 34.05.325(5). The Court is unaware of any reason to hold otherwise.

Fourth, the regulations bore traditional hallmarks of legislation. The Commission itself exercised powers delegated to it by the State Legislature. *See supra*. Moreover, the regulations became part of the Washington Administrative Code.

### 4. Conclusion

Defendants have shown that Plaintiffs' Complaint fails to state a federal claim upon which relief may be granted. Defendant State of Washington is immune from suit under the Eleventh Amendment. The individual Defendants are immune from suit in both their official and individual capacities under the doctrine of legislative immunity. Therefore, Defendants' motion to dismiss Plaintiffs' claim under 42 U.S.C. § 1983 is granted.

**D.    State Law Claims**

By this order, the Court dismisses Plaintiffs' claim that provided the basis for federal jurisdiction, and does not reach the merits of Defendants' motion to dismiss Plaintiffs' remaining claims for violations of state law. The parties are ordered to show cause, no later than October 24, 2008, why Plaintiffs' remaining state law claims should not be remanded to state court.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) (Dkt. 21) is **GRANTED in part** and Plaintiffs' claim under 42 U.S.C. § 1983 is **DISMISSED**.

It is further **ORDERED** that Plaintiffs and Defendants are directed to show cause, no later than October 24, 2008, why Plaintiffs' remaining state law claims should not be remanded to state court.

DATED this 15th day of October, 2008.

BENJAMIN H. SETTLE
United States District Judge